UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO: _1:19-CV-0821_
(TJM/CFH)

| | |
|---|---|
| CHARLES MAURER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| SYSCO ALBANY, LLC; THOMAS TEAL; | ) |
| AND CRAIG WITTENBERG, | ) |
| | ) |
| Defendants | ) |

## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, Charles Maurer ("Mr. Maurer" or "Plaintiff"), is a male resident of the State of New York residing at 12 David Lane, Saratoga Springs, New York, 12866.

2.      Defendant, Sysco Albany, LLC (the "Company") is incorporated under Delaware law.  Sysco's principal office is located at One Liebich Lane, Clifton Park, NY 12065.

3.      Craig Wittenberg ("Mr. Wittenberg") is an adult male and, upon information and belief, resides in New York.  At all relevant times, Mr. Wittenberg was a regional manager for the Company.  Mr. Wittenberg is named in both his individual and official capacity.

4.      Thomas Teal ("Mr. Teal") is an adult male and, upon information and belief, resides in New York.  At all relevant times, Mr. Teal was a vice president for the Company.  Mr. Teal is named in both his individual and official capacity.

### Jurisdiction and Venue

5.     The court has subject matter jurisdiction under 28 U.S.C. §1331 because Mr.
Maurer has brought a claim pursuant to the Americans with Disability Act ("ADA") 42 U.S.C.
§§ 1201 et seq. and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The court
may exercise supplemental jurisdiction over Mr. Maurer's state law claims.  28 U.S.C. §1367.

6.     Venue is appropriate in the Northern District of New York as the Plaintiff lives in
the Northern District of New York and/or the acts or omissions giving rise to the claims in this
Complaint occurred in the Northern District of New York.

7.     The court has jurisdiction over all named Defendants, including but not limited to,
because they purposefully availed themselves of New York law by operating a business in New
York, transacting business in New York, and employing employees (including, during the times
relevant to this Complaint, Mr. Maurer) in New York.

### Statement of Facts

8.     In or around May 2003, Mr. Maurer began working for the Company.

9.     At all relevant times, the Company employed 15 or more employees for 20 or
more calendar weeks during the preceding 12 months.

10.     Indeed, at all relevant times, the Company was engaged in an industry affecting
commerce and employed 50 or more employees during 20 or more calendar weeks in each
current and/or preceding calendar year.

11.     At all relevant times, Mr. Maurer was a qualified employee and his job
performance was satisfactory.

12.     Because of his strong performance, over the course of his employment with the Company Mr. Maurer was promoted up from a marketing associate into sales and eventually to a district sales manager with approximately 11 sales associates working underneath him.

13.     Throughout his employment, Mr. Maurer frequently received raises and bonuses because of his strong performance, including most recently in early December 2017.

14.     Additionally, because of his strong performance Mr. Maurer was entrusted with the important role of evaluating new marketing associates for the entire Northeast region.

15.     Likewise, Mr. Maurer was one of only five district managers nationwide to meet with representatives of Sodexho/Entegra, one of the Company's largest customers, in a high-level meeting to improve relationships between the two companies.

16.     Mr. Maurer suffers from diagnosed attention deficit/hyperactivity disorder ("ADHD"), an anxiety disorder, and a depression disorder (hereinafter his "disabilities"). Mr. Maurer's ADHD, anxiety, and depression are, and at all relevant times were (both individually and collectively), an impairment that substantially limited one or more major life activities and/or bodily functions, including but not limited to his ability to be happy, focus, control his emotions, maintain a normal sleep schedule, and to socialize with others, as well as impacting his neurological functions. As such, his ADHD, anxiety, and depression (both individually and collectively) are disabilities under state and federal law. Accordingly, under state and federal law Mr. Maurer was and is disabled.

17.     Towards the latter half of 2017, Mr. Maurer was experiencing heightened symptoms related to his disabilities and he was feeling extremely depressed and anxious.

18.     On or around Monday December 18, 2017, Mr. Maurer met with Craig
Wittenberg ("Mr. Wittenberg"), a regional manager for the Company, after a planned visit they
had with a customer.

19.     Upon information and belief, Mr. Wittenberg is not disabled and certainly does
not suffer from a disability related to ADHD, anxiety, or depression.

20.     During this conversation, Mr. Maurer disclosed that he had ADHD, anxiety, and
depression and was suffering a severe flare up of these disabilities.

21.     Mr. Maurer went on to state that he had gone to his personal physician to discuss
this and that he had suffered an emotional breakdown over the weekend.

22.     Mr. Maurer further mentioned he had been prescribed medicine for his disabilities
and asked for the reasonable accommodation of seeing his therapist (a nurse practitioner) during
working hours the next day.

23.     As part of this discussion, Mr. Maurer indicated that, as a disability-related
accommodation, he might need to take a medical leave to receive treatment related to his
disabilities.

24.     Notably, at this time Mr. Maurer had been employed by the Company for a period
greater than 12 months and had worked in excess of 1250 hours during the previous 12-month
period.

25.     Additionally, at all relevant times the Company employed 50 or more employees
within 75 miles of Mr. Maurer's worksite.

26.     Mr. Wittenberg approved Mr. Maurer's reasonable accommodation request to see
his therapist the following day.

27.     The following day, Mr. Maurer utilized this accommodation to see his therapist (a nurse practitioner) and his therapist ordered further tests and confirmed that there would be utility in taking a limited leave from work related to his disabilities.

28.     Shortly thereafter, on or around Wednesday December 20, 2017, Mr. Maurer met with Mr. Wittenberg and Thomas Teal ("Mr. Teal"), a vice president of the Company.

29.     During this conversation, Mr. Teal made clear that he had learned about Mr. Maurer's disabilities and accommodation requests from Mr. Wittenberg and even asked how Mr. Maurer's therapy appointment had gone.

30.     Mr. Maurer disclosed to them that his medical provider had ordered blood work tests to be done related to his disabilities and was evaluating his disability-related medication. Mr. Maurer also again made clear that in the near future he planned to submit a formal request for medical leave (in the form of FMLA leave) related to his disabilities / serious medical conditions.

31.     At the end of that week, Mr. Maurer went on a pre-scheduled and approved vacation for the Christmas holidays.

32.     Importantly, at no point did anyone give Mr. Maurer any indication that his performance was less than satisfactory.

33.     Mr. Maurer returned to work on or around January 2, 2018, at which time he had received the bloodwork back from his therapist and it had been determined that he was going to need to go out on a medical leave.

34.     On or around Friday January 5, 2018, Mr. Maurer met with Mr. Teal and the Company's Vice President of Human Resources Lynn Harris ("Ms. Harris").

35.     Mr. Maurer opened the meeting by reiterating to Mr. Teal and Ms. Harris that he was formally requesting a medical leave of absence pursuant to the Family and Medical Leave Act at the recommendation of his therapist (a nurse practitioner).

36.     This constituted both a request for FMLA leave, for which Mr. Maurer was entitled, and a requested for a disability-related reasonable accommodation.

37.     Rather than engage in an interactive dialogue or provide Mr. Maurer with FMLA paperwork, Mr. Teal said that the Company would not allow Mr. Maurer to go out on leave.

38.     Mr. Teal then suddenly declared that Mr. Maurer was being terminated, allegedly for performance.

39.     Importantly, in the past, whenever the Company has terminated non-disabled employees for performance, such employees had typically first been subjected to the Company's mandatory progressive discipline policy, or had at least received progressive performance management (including performance improvement plans).

40.     The Company's progressive discipline policy provided for a verbal warning, a written warning, and a 30/60/90 action plan (a performance improvement plan with goals that must be completed within 30 day, 60 days, and finally within 90 days), all prior to termination.

41.     Indeed, as a manager Mr. Maurer had received training about this progressive discipline policy where it was stressed that unless an employee was fired for gross misconduct, it was mandatory that they first go through the entirety of the progressive discipline policy before facing termination.

42.     Mr. Maurer had not been subjected to any formal discipline or any of the other steps laid out in the progressive discipline policy.

43.     Upon information and belief, Mr. Maurer was performing as well as or better than other non-disabled district sales managers who were not terminated.

44.     Notably, many of Mr. Maurer's non-disabled colleagues had received a verbal warning, written warning, and/or the 30/60/90 plan and had not been terminated.

45.     Even when the Company did ultimately terminate non-disabled employees for performance, it typically first utilized a verbal warning, written warning, and/or the 30/60/90 plan.

46.     Upon information and belief, multiple non-disabled employees placed on 30/60/90 plans made the goal of those plans and were not terminated.

47.     In fact, multiple non-disabled colleagues of Mr. Maurer had continued to be employed after completing 30/60/90 plans, and some had even been allowed to stay employed after being placed on several 30/60/90 plans.

48.     Further, when other district sales managers did not meet the goals of the 30/60/90 plans they were subject to, they were rarely (if ever) terminated.

49.     Instead, because district sales managers at the Company had been, by and large, promoted up into their district sales manager position from a lower level sales position (as Mr. Maurer was), non-disabled district sales managers with performance problems were often demoted back to a sales position if their performance did not improve after the 30/60/90 plan.

50.     For example, District Sales Manager Scott Nessis ("Mr. Nessis") was demoted into another position (but allowed to stay employed) after failing to meet the goals of a 30/60/90 plan. Upon information and belief, Mr. Nessis still works for the Company.

51.     Mr. Nessis is a non-disabled man.

52.     Likewise, District Sales Manager Doug Sheraton ("Mr. Sheraton") was demoted into another position (but allowed to stay employed) after failing to meet the goals of a 30/60/90 plan and, upon information and belief, continues to work for the Company.

53.     Mr. Sheraton is a non-disabled man.

54.     Additionally, Mr. Teal himself had been placed on several 30/60/90 plans and had not been terminated.  Upon information and belief, Mr. Teal is not disabled and certainly does not suffer from a disability related to ADHD, anxiety, or depression.

55.     Notably, even if Mr. Maurer had indeed been displaying objectively poor performance (which was not the case), Mr. Maurer had in the past been highly successful in lower level sales positions at the Company.  Indeed, in the past Mr. Maurer had been a top 5 salesperson at the Company.

56.     Upon information and belief, at the time of Mr. Maurer's termination there were other open lower level sales position within the Company that Mr. Maurer could have been transferred to.

57.     Indeed, other non-disabled managers who had been historically less successful than Mr. Maurer in non-managerial sales positions were allowed to transfer into non-managerial sales positions.

58.     As such, Mr. Maurer was treated inconsistently and more harshly than other non-disabled colleagues by not being transferred / demoted back to a lower level sales position (in which he had a proven track record of success).

59.     As such, it is clear that Mr. Maurer's termination was the result of discriminatory and retaliatory bias.

60.     In May of 2018, Mr. Maurer timely filed a Charge of Discrimination with the

United States Equal Employment Opportunity Commission ("EEOC").

61.     On April 25, 2019, Mr. Maurer received a right to sue letter from the EEOC.

62.     This lawsuit is timely filed.


## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

### Mr. Maurer v. All Defendants

63.     Mr. Maurer incorporates all paragraphs above and below as if set forth fully herein.

64.     The Company is an employer under the definition of the New York State Human Rights Law because, at all relevant times, it employed four or more persons.

65.     Mr. Maurer suffers (and at all relevant times suffered) from disabilities, including, depression, ADHD, and anxiety. Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities, including his ability to be happy, focus, control his emotions, maintain a normal sleep schedule, and to socialize with others, as well as impacting his neurological functions. Accordingly, Mr. Maurer is (and at all relevant times was) disabled under the New York State Human Rights Law.

66.     At all relevant times, Mr. Maurer was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

67.     Mr. Maurer disclosed his disabilities to the Defendants, and/or the Defendants were aware of Mr. Maurer's disabilities, and/or the Defendants regarded Mr. Maurer as disabled.

68.     Mr. Maurer requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, a temporary leave of absence and the ability to see his therapist during working hours.

69.     The disability-related accommodations requested by Mr. Maurer did not pose an undue burden on Defendants.

70.     The Defendants failed to engage in an interactive dialogue and unlawfully denied one or more of Mr. Maurer's accommodation requests, including but not limited to his request for a disability-related temporary leave of absence.

71.     Defendants discriminated against Mr. Maurer due to his disabilities by subjecting Mr. Maurer to adverse actions, including, but not limited to, subjecting Mr. Maurer to a harassing and otherwise hostile work environment, by holding Mr. Maurer to a higher standard than his non-disabled colleagues, by denying Mr. Maurer the benefit of progressive discipline/performance management prior to termination, denying Mr. Maurer the opportunity to take a demotion, and/or terminating Mr. Maurer's employment.

72.     Non-disabled employees of the Company were treated more favorably than Mr. Maurer including through not being improperly harassed, not subjected to a hostile work environment, not being held to a higher standard, not denied the benefit of progressive discipline/performance management prior to termination, being afforded the opportunity to take a demotion, and/or not terminated.

73.     Upon information and belief, Mr. Wittenberg was involved in the decision to terminate Mr. Maurer.

74.     Upon information and belief, Mr. Teal was involved in the decision to terminate Mr. Maurer.

75.     Upon information and belief, the Company replaced Mr. Maurer with a lesser or similarly qualified, non-disabled employee.

76.     Mr. Wittenberg discharged, expelled, barred, and/or discriminated against Mr. Maurer in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maurer under the New York State Human Rights Law.

77.     Mr. Wittenberg aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

78.     Mr. Teal discharged, expelled, barred, and/or discriminated against Mr. Maurer in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maurer under the New York State Human Rights Law.

79.     Mr. Teal aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

80.     Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Maurer and/or conduct so reckless to amount to such disregard.

81.     As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including,

but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

82.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorney's fees, and costs..

## COUNT II

### (Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

### Mr. Maurer v. The Company

83.    Mr. Maurer incorporates all paragraphs above and below as if set forth fully herein.

84.    During all relevant times the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12 month period.

85.    At all relevant times, Mr. Maurer was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

86.    Mr. Maurer suffers (and at all relevant times suffered) from disabilities, including, depression, ADHD, and anxiety.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities, including his

ability to be happy, focus, control his emotions, maintain a normal sleep schedule, and to socialize with others, as well as impacting his neurological functions. Accordingly, Mr. Maurer is (and at all relevant times was) disabled under the ADA.

87.   Mr. Maurer disclosed his disabilities to the Defendants, and/or the Defendants were aware of Mr. Maurer's disabilities, and/or the Defendants regarded Mr. Maurer as disabled.

88.   Mr. Maurer requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, a temporary leave of absence and the ability to see his therapist during working hours.

89.   The disability-related accommodations requested by Mr. Maurer did not pose an undue burden on Defendants.

90.   The Company failed to engage in an interactive dialogue and unlawfully denied one or more of Mr. Maurer's accommodation requests, including but not limited to his request for a disability-related temporary leave of absence.

91.   The Company discriminated against Mr. Maurer due to his disability by subjecting Mr. Maurer to adverse actions, including, but not limited to, subjecting Mr. Maurer to a  harassing and otherwise hostile work environment, by holding Mr. Maurer to a higher standard than his non-disabled colleagues, by denying Mr. Maurer the benefit of progressive discipline/performance management prior to termination, by denying Mr. Maurer the opportunity to take a demotion, and/or terminating Mr. Maurer's employment.

92.   Upon information and belief, the Company replaced Mr. Maurer with a lesser or similarly qualified, non-disabled employee.

93.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maurer.

94.     As a direct and proximate result of the Company's violation of the ADA, Mr. Maurer has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

95.     Mr. Maurer seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorney's fees, and costs.

## COUNT III

**(Interference and Retaliation for Exercising Rights under the Family Medical Leave Act –**

**29 U.S.C. §2615)**

### Mr. Maurer v. All Defendants

96.     Mr. Maurer incorporates all paragraphs above and below as if set forth fully herein.

97.     During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

98.     As such, at all relevant times, the Company was an employer under the FMLA.

99.     At all relevant times, the Company collectively employed 50 or more employees within 75 miles of Mr. Maurer's worksite.

100.    At all relevant times, Mr. Maurer had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

101.    As such, Mr. Maurer was an eligible employee under the FMLA.

102.    Mr. Maurer suffered from one or more serious health conditions, including, but not limited to, his depression, his anxiety, and his ADHD.

103.    Mr. Maurer was entitled to FMLA leave.

104.    Mr. Maurer sought to exercise his rights under the FMLA, including by requesting one or more protected leaves under the FMLA; and/or requesting information regarding his eligibility and/or entitlement to a protected leave under the FMLA; and/or informing his employer of the likelihood that he would be requesting a protected leave under the FMLA in the future.

105.    Mr. Maurer timely notified Defendants that he would need FMLA leave.

106.    Defendants interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Mr. Maurer's rights under the FMLA.  More specifically, when Mr. Maurer requested to go on his protected FMLA leave Defendants told him he could not because he was terminated.

107.    Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Maurer for requesting and/or utilizing FMLA leave by subjecting Mr. Maurer to adverse actions, including, but not limited to subjecting Mr. Maurer to a harassing and otherwise hostile work environment, by holding Mr. Maurer to a higher standard than his non-disabled colleagues, by denying Mr. Maurer the benefit of progressive discipline/performance

management prior to termination, denying Mr. Maurer the opportunity to take a demotion, and/or terminating Mr. Maurer's employment.

108.    Mr. Wittenberg was an employer under the FMLA because he had the power to hire and/or fire Mr. Maurer, supervised and controlled Mr. Maurer's conditions of employment including his work schedule, played a role in determining Mr. Maurer's rate and method of payment, and/or played a role in maintaining Mr. Maurer's employment records.

109.    Mr. Teal was an employer under the FMLA because he had the power to hire and/or fire Mr. Maurer (and in fact used this power to fire Mr. Maurer), supervised and controlled Mr. Maurer's conditions of employment including his work schedule, played a role in determining Mr. Maurer's rate and method of payment, and/or played a role in maintaining Mr. Maurer's employment records.

110.    Defendants' actions were willful and undertaken in bad faith.

111.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Maurer has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

112.    Mr. Maurer seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT IV

## (Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)

### Mr. Maurer v. All Defendants

113.    Mr. Maurer incorporates all paragraphs above and below as if set forth fully herein.

114.    Mr. Maurer engaged in protected activity under the New York State Human Rights Law, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Maurer's disabilities; (ii) requesting reasonable accommodations for disabilities which were intended to allow Mr. Maurer to perform the essential functions of his job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Company to provide disability-related reasonable accommodations and/or the failure of the Company to engage in an interactive dialogue related to Mr. Maurer's disabilities and requested accommodations.

115.    The disability-related accommodation requests which Defendants retaliated against Mr. Maurer for requesting included, but were not limited to, a temporary leave of absence to treat his disabilities and the ability to see his therapist during working hours

116.    Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Maurer's exercising of or enjoyment of rights granted by The New York State Human Rights Law.

117.    More specifically, Defendants subjected Mr. Maurer to adverse actions, including, but not limited to, subjecting Mr. Maurer to a harassing and otherwise hostile work environment, by holding Mr. Maurer to a higher standard than his non-disabled colleagues, by denying Mr.

Maurer the benefit of progressive discipline/performance management prior to termination, denying Mr. Maurer the opportunity of taking a demotion, and/or terminating Mr. Maurer's employment.

118. Upon information and belief, Mr. Wittenberg was involved in the decision to terminate Mr. Maurer.

119. Upon information and belief, Mr. Teal was involved in the decision to terminate Mr. Maurer.

120. Mr. Wittenberg discharged, expelled, barred, and/or discriminated against Mr. Maurer in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maurer under the New York State Human Rights Law.

121. Mr. Wittenberg aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

122. Mr. Teal discharged, expelled, barred, and/or discriminated against Mr. Maurer in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maurer under the New York State Human Rights Law.

123. Mr. Teal aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

124. Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Maurer and/or conduct so reckless to amount to such disregard.

125.    As a direct and proximate result of Defendants' violation of The New York State

Human Rights Law, Mr. Maurer has suffered and continues to suffer damages, including, but not

limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain

and suffering, loss of enjoyment of life, and emotional damages.

126.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, uncapped compensatory damages (including, but not

limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,

interest, attorney's fees, and costs.

## COUNT V

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Maurer v. The Company**

127.    Mr. Maurer incorporates all paragraphs above and below as if set forth fully

herein.

128.    Mr. Maurer engaged in protected activity under the ADA, including, but not

limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity

related to the harassing and discriminatory actions taken by the Company due to Mr. Maurer's

disabilities; (ii) requesting reasonable accommodations for disabilities which were intended to

allow Mr. Maurer to perform the essential functions of his job; and/or (iii) opposing, voicing

protected concerns, and/or engaging in other protected activity related to the failure of the

Company to provide disability-related reasonable accommodations and/or the failure of the

Company to engage in an interactive dialogue related to Mr. Maurer's disabilities and requested accommodations.

129.    The disability-related accommodation requests which the Company retaliated against Mr. Maurer for requesting included, but were not limited to, a temporary leave of absence to treat his disabilities and the ability to see his therapist during working hours.

130.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Maurer's exercising of, or enjoyment of, one or more rights granted by the ADA.

131.    More specifically, the Company subjected Mr. Maurer to adverse actions, including but not limited to, subjecting Mr. Maurer to a harassing and otherwise hostile work environment, by holding Mr. Maurer to a higher standard than his non-disabled colleagues, by denying Mr. Maurer the benefit of progressive discipline/performance management prior to termination, and/or terminating Mr. Maurer's employment.

132.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maurer.

133.    As a direct and proximate result of the Company's violation of the ADA, Mr. Maurer has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

134.    Mr. Maurer seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorney's fees, and costs.

WHEREFORE, the plaintiff, Charles Maurer, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury, and;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff monetary damages, including, but not limited to, back pay, lost compensation and benefits, front pay, and other monetary harms;

D.  Award the Plaintiff compensatory damages, including, but not limited for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and, loss of enjoyment of life;

E.  Award the Plaintiff damages for harm to reputation and reduced earning capacity;

F.  Award the Plaintiff liquidated (i.e. double) damages;

G.  Award the Plaintiff punitive damages;

H.  Award the Plaintiff his reasonable attorney's fees;

I.  Award the Plaintiff interest and costs;

J.  Award the Plaintiff all other damages to which he is entitled; and

K.  Grant such further relief as is just and equitable.

Respectfully Submitted,

CHARLES MAURER

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: July 10, 2019          By:          _____

Benjamin J. Wyatt, NY Bar # 5604590
BWyatt@Wyattlegalservices.com

Timothy J. Brock, NY Bar # 5614151
TBrock@Wyattlegalservices.com

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207